788 So.2d 779 (2000)
Cheryl Ann Young FOSTER, Appellant,
v.
Ronnie Lee FOSTER, Appellee.
No. 1998-CA-01646-COA.
Court of Appeals of Mississippi.
October 24, 2000.
Rehearing Denied February 20, 2001.
Certiorari Denied June 28, 2001.
*780 Robert R. Marshall, Hattiesburg, Attorney For Appellant.
Leonard Brown Melvin III, Bonnie J. Davis, Hattiesburg, Attorneys For Appellee.
Before McMILLIN, C.J., IRVING, MOORE, and PAYNE, JJ.

PROCEDURAL HISTORY AND FACTS
PAYNE, J., for the Court:
¶ 1. The present case evolved from a December 1995 agreed order of modification which changed permanent custody of Lauren Foster from her mother, Cheryl Foster, to joint custody with Cheryl and Lauren's father, Ronnie Foster. In May 1997, Ronnie filed an emergency petition to modify custody, and after a November 1997 hearing the chancellor entered a temporary order changing custody to Ronnie. In September 1998, the chancellor changed custody back to Cheryl, basing his decision largely on Lauren's election to live with her mother. What has transpired from that time to the present is a barrage of proceedings which have led to Lauren's being transferred back and forth between parents and her undergoing psychological therapy for severe depression, among other things.
¶ 2. With the current appeal, Cheryl argues she was due a custody hearing, that the chancellor was improper in appointing a guardian ad litem for Lauren, that the chancellor failed to consider all of the Albright factors in changing custody, and that the chancellor erred in not recusing *781 himself from this case. However, the lower court granted her custody, so there is no issue in controversy for this appellant. As described herein, none of Cheryl's arguments have merit, and we affirm the chancellor on all issues.

ANALYSIS OF THE ISSUES PRESENTED

STANDARD OF REVIEW
¶ 3. Cheryl Foster raises the following issues with this appeal:
I. THE LOWER COURT ERRED IN ENTERING ANY ORDER CONCERNING CUSTODY OF A MINOR CHILD WITHOUT A FULL HEARING ON THE MERITS.
II. THE LOWER COURT ERRED IN APPOINTING A GUARDIAN AD LITEM IN THIS MATTER, ALLOWING THE GUARDIAN AD LITEM TO FILE REPORTS CONTAINING HEARSAY AND MAKING RECOMMENDATIONS, ALLOWING THE GUARDIAN AD LITEM REPORTS TO BE INTRODUCED INTO EVIDENCE, AND AWARDING THE GUARDIAN AD LITEM FEES AND EXPENSES.
III. THE LOWER COURT COMMITTED ERROR IN CHANGING CUSTODY BASED ON THE ELECTION OF A MINOR OVER THE AGE OF TWELVE WITHOUT CONSIDERING ALL OF THE ALBRIGHT FACTORS.
IV. THE CHANCELLOR COMMITTED ERROR IN NOT RECUSING HIMSELF AND IN INVOLVING SANCTIONS.
¶ 4. Our standard of reviewing a chancellor's decision is stated in Bower v. Bower, 758 So.2d 405 (¶ 11) (Miss.2000).
The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.
(citations omitted). Finding the chancellor acted properly in the case sub judice, we affirm on all issues. Additionally, we impose sanctions against the appellant pursuant to Mississippi Rule of Appellate Procedure 38, which is described herein.

DISCUSSION OF THE ISSUES

I. THE LOWER COURT ERRED IN ENTERING ANY ORDER CONCERNING CUSTODY OF A MINOR CHILD WITHOUT A FULL HEARING ON THE MERITS.
¶ 5. In December 1995, an agreed order of modification changed custody of Lauren Foster from permanent with Cheryl to joint with both Cheryl and Ronnie. Thereafter, the parents disputed back and forth concerning visitation and child support, the chancellor eventually entering a temporary order in November 1997 which enforced the 1995 modification. On appeal, Cheryl argues that all proceedings and orders entered after November 1997 were improper because there was no evidence that material changes in circumstances had occurred or that Lauren's best interests were affected. Ronnie argues, first, that ample evidence did exist to show a change in custody was warranted, and second, that those times Lauren remained with him outside the normal visitation schedule, Cheryl agreed to allow this.
¶ 6. Cheryl contends that the chancellor's only basis for changing custody was Lauren's election to live with her father, and that without the chancellor's conducting a custody hearing such decision is voidable. However, Cheryl did actually attend *782 a November 17, 1997 hearing on this matter, for which we have the record and transcripts of her testimony. At that hearing the judge stated several times that he had Lauren's best interests in mind in keeping her with Ronnie as not to uproot her half-way through the school semester. Additionally, as of the 1998 custody ruling, Cheryl currently has custody of Lauren, who will turn seventeen years old in November 2000. As Cheryl seeks no remedy nor makes any logical arguments concerning this issue, we find this issue to be without merit.

II. THE LOWER COURT ERRED IN APPOINTING A GUARDIAN AD LITEM IN THIS MATTER, ALLOWING THE GUARDIAN AD LITEM TO FILE REPORTS CONTAINING HEARSAY AND MAKING RECOMMENDATIONS, ALLOWING THE GUARDIAN AD LITEM REPORTS TO BE INTRODUCED INTO EVIDENCE, AND AWARDING THE GUARDIAN AD LITEM FEES AND EXPENSES.
¶ 7. Cheryl argues the appointment of a guardian ad litem was improper and asks this Court to set forth factors for appointing a guardian ad litem. She also argues the chancellor's making such appointment pursuant to Miss.Code Ann. § 93-5-23 was improper in this "garden variety custody matter." This code section was amended by the 2000 legislative section, but previously read in pertinent part:
The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney. Unless the chancery court's jurisdiction has been terminated, all disposition orders in such cases for placement with the Department of Human Services shall be reviewed by the court or designated authority at least annually to determine if continued placement with the department is in the best interest of the child or public.
Miss.Code Ann. § 93-5-25 (Supp.1999). The guardian ad litem was appointed in December 1996. The chancellor stated that the appointment of the guardian ad litem was necessary since allegations of child abuse abounded. Though Cheryl argues that the guardian ad litem should never have been appointed, it is important to note that Cheryl agreed to such appointment. In the May 1997 agreed order, attorneys for both Ronnie and Cheryl signed the order electing to continue using the guardian ad litem to protect Lauren's interests. Thus, Cheryl's contention on appeal that the appointment of the guardian ad litem was improper is erroneous.
¶ 8. Next, Cheryl claims Ronnie should pay the guardian ad litem fees, rather than them both splitting these fees, as the chancellor ordered they do.
If after investigation by the Department of Human Services or final disposition by the youth court or family court allegations of child abuse are found to be without foundation, the chancery court shall order the alleging party to pay all court costs and reasonable attorney's fees incurred by the defending party in responding to such allegation.
Miss.Code Ann. § 93-5-25 (Supp.1999). Pursuant to this code section, the person responsible for allegations of abuse is responsible for paying the guardian ad litem fees. In the judge's statements at the September 1998 hearing on guardian ad litem fees, he recalled testimony concerning confrontations between Lauren and *783 her mother, and also noted that Cheryl had initially claimed that Ronnie had abused the child. Since each parent had been accused of some form of abuse, the chancellor reasoned that fees for the guardian ad litem should be assessed against each party equally. Finding this not to be an abuse of discretion, we affirm.

III. THE LOWER COURT COMMITTED ERROR IN CHANGING CUSTODY BASED ON THE ELECTION OF A MINOR OVER THE AGE OF TWELVE WITHOUT CONSIDERING ALL OF THE ALBRIGHT FACTORS.
¶ 9. Cheryl argues that the chancellor erred in his decisions to switch custody of Lauren back and forth, claiming he did so solely at the child's election. To the contrary, various places in the record show that the chancellor considered different factors, including the relationship of Lauren with her parents at different times, the fact that Lauren would be forced to switch schools mid-semester, the guardian ad litem's reports, and Lauren's own election as to with whom she wished to live. Thus, there is ample evidence to show the judge evaluated the totality of circumstances affecting Lauren's best interests, as he is required to do.
This Court has articulated the law of modification of child custody as follows: First, the moving party must prove by a preponderance of evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.
Riley v. Doerner, 677 So.2d 740, 743 (Miss. 1996) (citations omitted). Nothing in the record indicates that a material change in circumstances existed to warrant any of the changes in custody the chancellor granted, and the chancellor very well may have been wrong in making such changes. However, at the present time, Cheryl has custody of Lauren as she did pursuant to the initial divorce agreement, so this issue is moot and we decline to take further action.

IV. THE CHANCELLOR COMMITTED ERROR IN NOT RECUSING HIMSELF AND IN INVOLVING SANCTIONS.
¶ 10. Cheryl filed motions asking the chancellor to recuse himself, since he had knowledge of the case that he gained from off-the-record proceedings. Regarding the chancellor's failure to recuse himself, the standard is this: would a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality? See Collins v. Joshi, 611 So.2d 898, 901 (Miss.1992). The primary evidence Cheryl puts forth in support of her allegation that the chancellor should have recused himself is that he communicated and relied upon the guardian ad litem's reports extensively. However, looking to the guardian ad litem's duties to keep the judge informed, we find that the guardian ad litem communicated to the judge in the form of her reports that were required to be filed with the court. Thus, all of her communications were proper and the judge had no reason to recuse himself. This issue is without merit.

CONCLUSION
¶ 11. As presented, this case contains no meritous issues for our adjudication. As such, we affirm the chancellor's decisions on all issues. Additionally, we tax the appellant with double costs pursuant to M.R.A.P. 38 which states, "In a civil case to which Miss.Code Ann. § 11-3-12 (1991) does not apply, if the Supreme Court or Court of Appeals shall determine *784 that an appeal is frivolous, it shall award just damages and single or double costs to the appellee." With Cheryl's issues, she argued (1) that she was due a hearing when in fact she had already been granted one; (2) that appointment of the guardian ad litem was improper, though statutory law clearly required appointment of such a guardian for Lauren; (3) that she should have custody of Lauren when she, in fact, did actually have custody; and (4) that the chancellor improperly declined to recuse himself when no possible reason existed for him to take such action. Finding that Cheryl's appeal is frivolous and was filed merely to harass her ex-husband, while not furthering the interests of their child, we find double costs an appropriate sanction against her.
¶ 12. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED. DOUBLE COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.